IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TIFFANY KEAR,

      Plaintiff,

      v.                                 Case No. 12-1235-JAR

KOHL'S DEPARTMENT STORES, INC,

      Defendant.

## MEMORANDUM AND ORDER

Plaintiff Tiffany Kear filed suit against her former employer Kohl's Department Stores, Inc. ("Kohl's"), alleging violations of Title VII of the Civil Rights Act of 1964 under the following theories: (1) gender discrimination; (2) gender stereotyping; (3) pregnancy discrimination; and (4) sexual harassment hostile work environment. She also alleges gender discrimination under the Kansas Act Against Discrimination ("KAAD"). Previously, this Court dismissed Plaintiff's claims of retaliation and constructive discharge.[1] Before the Court is Defendant's Motion for Summary Judgment (Doc. 195) as to all remaining claims. Plaintiff has filed a Motion for Leave to File Surreply (Doc. 220), and a Motion for Oral Argument (Doc. 210) on the summary judgment motion. The Court grants Plaintiff's motion for leave to file the surreply and has considered the attached proposed surreply in rendering its summary judgment decision. The Court denies Plaintiff's motion for oral argument as it does not find that oral argument would materially assist the Court in deciding the issues presented by the motion.

As explained more fully below, Defendant's motion for summary judgment is granted. Plaintiff has abandoned her pregnancy discrimination claim. Plaintiff's sexual harassment claim

---

[1]Doc. 49.

is dismissed for failure to exhaust administrative remedies.  Plaintiff's failure to promote claim is dismissed in part for failure to timely exhaust any promotion decisions for which Plaintiff had notice prior to June 13, 2010.  It is otherwise dismissed for failure to demonstrate a genuine issue of material fact about whether Kohl's nondiscriminatory reasons for the employment decisions are a pretext for discrimination.

## I.   Procedural History

On February 13, 2013, this Court ruled on Defendant's motion to dismiss Plaintiff's retaliation and constructive discharge claims.  The Court found that Plaintiff failed to administratively exhaust her retaliation claim.  The Court dismissed Plaintiff's independent claim of constructive discharge claim under Fed. R. Civ. P. 12(b)(6) because such a claim is not cognizable as a matter of law.  However, the Court allowed Plaintiff "the opportunity to assert a constructive discharge theory on her remaining discrimination claims."[2]  In its motion for summary judgment, Defendant reasserts its arguments that Plaintiff cannot maintain a claim of constructive discharge; Plaintiff suggests in her response that this claim survived the motion to dismiss.  To the extent Plaintiff attempts to reinstate an independent claim for constructive discharge, she is foreclosed by the Court's previous order.  Plaintiff maintains that her other claims rely on a constructive discharge "theory," but she fails to elucidate which claim: her discrimination claims rely solely on theories of failure to promote and sexual harassment.  The adverse employment action related to the failure to promote claims is not constructive discharge but failure to promote.  And, as described below, the Court lacks jurisdiction over the sexual harassment claims because Plaintiff failed to administratively exhaust.  The Court finds no

---

[2]Doc. 49 at 9.

remaining discrimination claims in this case that rely upon a constructive discharge theory of damages.

The Pretrial Order[3] in this case sets forth the following "live" theories upon which Plaintiff claims to be entitled to recover: (1) gender discrimination in violation of Title VII; (2) gender stereotyping in violation of Title VII; (3) pregnancy discrimination in violation of Title VII; (4) sexual harassment in violation of Title VII; and (5) discrimination under state law. Defendant moves for summary judgment on all remaining claims, as well as any remaining constructive discharge theory.  As explained above, there is no remaining constructive discharge theory so the Court finds that Defendant's motion for summary judgment is moot as to that claim or theory.  Moreover, Plaintiff does not address any pregnancy discrimination claim in her response to the motion for summary judgment.  To be sure, her failure to promote claim is based in part on the contention that she was passed over for promotions based on sex, specifically based on her status as a mother, but she does not argue that she was passed over for the specific promotions at issue when she was pregnant.  Therefore, the Court finds this claim abandoned and grants Defendant's motion as to this claim.

## II.    Administrative Exhaustion

Plaintiff brings her federal discrimination claims under Title VII, which requires exhaustion of administrative remedies.[4]  In the Tenth Circuit, failure to exhaust administrative remedies is a jurisdictional bar to filing suit.[5]  Because exhaustion of administrative remedies is a jurisdictional requirement, the plaintiff bears the burden of showing exhaustion.[6]  To exhaust

---

[3]Doc. 188 (Nov. 13, 2014).

[4]*Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005).

[5]*Id.*; *Mackley v. TW Telecom Holdings, Inc.*, 296 F.R.D. 655, 665 (D. Kan. 2014).

[6]*McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1106 (10th Cir. 2002).

administrative remedies, a plaintiff must file a charge of discrimination with either the Equal

Employment Opportunity Commission ("EEOC")  or an authorized local agency and receive a

right-to-sue letter based on that charge.[7]  The Court must liberally construe the administrative

charge to determine whether a particular claim has been exhausted.[8]  The inquiry "is limited to

the scope of the administrative investigation that can reasonably be expected to follow from the

discriminatory acts alleged in the administrative charge."[9]  "When an employee seeks judicial

relief for conduct not listed in the original charge, the judicial complaint nevertheless may

encompass any discrimination 'like or reasonably related to the allegations of the EEOC

charge.'"[10]

     Defendant moves to dismiss Plaintiff's sexual harassment claim in its entirety for failure

to exhaust.  It also moves to dismiss Plaintiff's failure to promote claims for failure to specify the

promotions for which Plaintiff claims she was denied.  Because this is a jurisdictional issue, the

Court considers it before proceeding to the merits.  On February 23, 2011, Plaintiff completed an

EEOC Intake Questionnaire in which she checked 'sex' and 'pregnancy' as the basis of her claim

for employment discrimination.  On April 9, 2011, Plaintiff filed her administrative Charge of

Discrimination with the Kansas Human Rights Commission ("KHRC") and the EEOC.  In her

charge, Plaintiff marked that the alleged discrimination was based on her sex and further narrated

that she was passed over for promotion due to her sex:

> I was hired by Kohl's on or about December 24, 2004 as an
> Assistant Store Manager in the Apparel and Accessories
> Department, and then later moved to the Human Resources
> Operations Department as an Assistant Store Manager.  Over the

---

[7]*Mackley*, 296 F.R.D. at 665.

[8]*Jones v. U.P.S.*, 502 F.3d 1176, 1186 (10th Cir. 2007).

[9]*Id.*; *Jones v. Wichita State Univ.*, 528 F. Supp. 2d 1222, 1237 (D. Kan. 2007).

[10]*Wichita State Univ.*, 528 F. Supp. at 1237 (quoting *Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003)).

> course of nearly six years of employment with Kohl's, I have applied on numerous occasions for the position of Store Manager, a position for which I am qualified to assume.  I have been passed over for promotion to Store Manager while other applicants without caregiver responsibilities and with less experience and/or qualifications were given the position.  I believe I have been passed over for promotion to Store Manager because of my sex (female) in violation of Title VII of the Civil Rights Act of 1964, as amended.[11]

On April 5, 2012, Plaintiff was issued a notice of a right to sue based on this charge.

The Court cannot find that the facts alleged in the administrative charge would have triggered an investigation of Plaintiff's claim of  sexual harassment by Kohl's.  Indeed, the Court observed in ruling on the 2013 motion to dismiss the retaliation claim that the narrative portion of Plaintiff's administrative charge "completely fails to describe her reports of alleged sexual harassment by her manager, nor does it discuss any retaliatory conduct by Kohl's."[12]  The Court also reviewed her EEOC Intake Questionnaire and found that she "did not allege that Kohl's took any retaliatory actions against her or discriminated against her due to her complaints of sexually harassing comments by her Store Manager."[13]  Notably, Plaintiff wholly fails to address this issue in her response to the motion for summary judgment.  Her administrative charge did not place the EEOC or Kohl's on notice that she was asserting a claim of sexual harassment, nor were her factual allegations sufficient to trigger an investigation of such a charge.  Plaintiff's sexual harassment claim is therefore dismissed for lack of jurisdiction.

The facts alleged in the administrative charge do sufficiently exhaust a claim that Defendant discriminated by failing to promote Plaintiff, despite not specifying the specific promotions for which Plaintiff claims to have lost.  The Court easily finds that all instances of

---

[11]Doc. 1 at 16.

[12]Doc. 49 at 6.  Defendant did not move to dismiss the sexual harassment claim at that time, it only moved to dismiss the retaliation claim.

[13]Doc. 49 at 7.

Kohl's failure to promote Plaintiff were within the scope of the administrative charge.  The Court therefore proceeds to consider the merits of the summary judgment motion as applied to the only remaining claims in this case: a failure to promote theory of gender discrimination under Title VII and the KAAD.

### III.    Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[14]  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[15]  "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[16]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[17]  An issue of fact is "genuine" if "'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'"[18]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[19]  In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an

---

[14]Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

[15]*City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[16]*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[17]*Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998)).

[18]*Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[19]*Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

essential element of that party's claim.[20]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[21]  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[22]  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[23]

The facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[24]  Rule 56(c)(4) provides that opposing affidavits must be made on personal knowledge and shall set forth such facts as would be admissible in evidence.[25] The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[26]

Finally, summary judgment is not a "disfavored procedural shortcut;" on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[27]  In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the

---

[20]*Adams v. Am. Guar. & Liab. Ins. Co.,* 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

[21]*Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[22]*Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[23]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671); *see Kannady*, 590 F.3d at 1169.

[24]*Adams*, 233 F.3d at 1246.

[25]Fed. R. Civ. P. 56(c)(4).

[26]*Id.*; *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted).

[27]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

mere hope that something will turn up at trial."[28]

IV.    **Uncontroverted Facts**

The following facts are uncontroverted, stipulated to, or viewed in the light most favorable to Plaintiff as the nonmoving party.  The Court considers only those factual averments that are material to the dispute and does not consider the parties' legal arguments in construing the facts.

Kohl's is a department store retail chain, headquartered in the Milwaukee suburb of Menomonee Falls, Wisconsin.  Kohl's operates stores in forty-nine states, including Kansas.  On December 1, 2004, Kear submitted an application for employment as an assistant store manager ("ASM") with Kohl's.  On her application, she indicated that she had graduated from Wichita State University ("WSU") in May 2003.  She had most recently worked at Abercrombie & Fitch as a store manager, a position she held for seven months.  Kear signed and dated the application, affirming that the statements are true and correct and that she understands that "any material misrepresentation, falsification or willful omission shall be sufficient reason for refusal of employment or dismissal . . . regardless of the time employed prior to the discovery."[29] During Kear's interview, Scott Wurzbacher, who was the District Manager at the time, told Kear that she would have "no problem" being promoted to SM within two years.

Kohl's hired Kear as an ASM at its Wichita West store, which was part of Kohl's Region 7.  During her employment at the Wichita West store, Kear reported to three different SMs: (1) Tom Baumhover until October 4, 2008; (2) Dennis Abrams between November 23, 2008 and October 6, 2009; and (3) Michael Brogdin from October 25, 2009, until Kear's resignation.  During the relevant time period, Peter Riley was the Regional Vice-President, Jolene

---

[28]*Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

[29]Doc. 196, Ex. D at 2.

Christiansen was the Region 7 HR Talent Manager, and Scott Link was the District Manager ("DM").

Kear started her employment on December 27, 2004, in the apparel and accessories department.   Her job entailed managing others, merchandising, and managing the entire store at times to make sure it ran efficiently.  In approximately 2006, Kear became the HR Operations ASM.  She was responsible for most of the human resources functions, including hiring, terminating, counseling, and training.  She was also in charge of all operations under the Store Manager ("SM").  Kear performed additional duties, such as serving as the point manager in charge and leading the store team when there were leadership changes at the Wichita West store. She served on leadership or store support teams in Kansas City and Lafayette, Louisiana.  During Baumhover's tenure, he relied heavily on Kear in operating the Wichita West store.  Kear was pregnant and had children while employed at Kohl's in 2006, 2007, and 2010.

There is no formal application process for a Kohl's employee to seek an internal promotion to the SM position.  Kohl's uses different processes to determine whether an individual will be given a SM position depending on whether that person is an internal employee or an external hire.  It does not use an application or interview process to select ASMs for SM positions.  A current employee is considered "ready to be a store manager" if he or she (1) is plotted on the Talent Matrix in the appropriate category, and (2) successfully goes through the development day process.

The Talent Matrix rating system is also referred to as the "nine box rating."  Employees are plotted using a dual-axis system, which takes into consideration "performance" on a vertical axis, and "leadership potential" on a horizontal axis.  The top row of boxes are titled from left to right, "Professional," "Deep Professional," and "Consistent Star."  The middle row of boxes are

titled from left to right, "Future Professional," "Key Performer," and "Future Star." The bottom row of boxes are titled from left to right, "Low Performer," "Uncertain Performer," and "Unproven Performer." Therefore, the highest scores on the matrix are consistent star, deep professional, and future star. Each box contains a list of bullet points that describe an employee within that score on the matrix.

Twice per year, the SMs get together with a district manager and discuss employees' leadership potential and each ASM is plotted on the nine box grid. Normally, the DM, SM, and HR Representative are part of this collaborative process. The DM then takes this information to the regional level, and represents the information to the regional manager, and all of the DMs in that region. An ASM is usually not promoted unless they are plotted on the Talent Matrix as a consistent star, future star or deep professional. Also, a person could be promoted even if not plotted in one of these boxes if they were considered "too new to rate."[30] The criteria used to plot an ASM on the Talent Matrix is both objective and subjective. One objective criteria is the number of customers an ASM signs up for Kohl's credit cards. The data used to plot ASMs relates to the stores as a whole. Kohl's corporate representative testified that "[W]hen you have a region, even a territory in a company, that someone has the ability to go to a different location than where they reside today, and a store manager position opens, we succession plan people into those potential openings."[31]

In addition to the Talent Matrix, an ASM must go through a development day, most of the time two, and sometimes more depending on the person's level of development, before being promoted to the SM position. An employee's plotting on the Talent Matrix is given a high amount of weight when considering whether to send him or her to a development day. The

---

[30] Doc. 196-6, Ex. E at 52:16–53:14.

[31] Doc. 205-6, Ex. 5 at 148:5–10.

decision to invite an ASM to a development day is made through a partnership with human resources, DMs, and sometimes the regional manager.

Plotting on the talent matrix takes place before the employee receives a final performance review for the year.  The final review is thus not used to plot employees on the Talent Matrix.  Although they are different evaluations, Kohl's corporate representative testified that the two reviews should "coincide."  In other words, if a person is rated with high level of performance on a managerial effectiveness score on the performance evaluation, that would indicate a higher score on the talent matrix.  Kear received numerous positive comments on her performance reviews in 2006, 2007, and 2008.   On the Talent Matrix, she was ranked as a key performer in the Fall 2008 assessment.  She was rated a future professional in the Spring, Summer, and Fall 2009 assessments, as well as in the Spring 2010 assessment.  She was deemed a key performer again in the Summer 2010.  Kear was never invited to a development day.  Kohl's did not view her as "somebody who could run a store" at the time it made the SM promotion decisions at issue.

Kear met the requirements set forth in the written SM job description.  SMs are not required to have a college degree.  Kear asked to be SM of the Wichita West store each time a SM left during her tenure—2008, 2009, and after Brogdin left on September 1, 2010.  Kear made it known to SMs and DMs that she was ready and willing to be promoted to SM of the Wichita East store, the Derby store, or any other Kohl's store, between 2006 and 2010.  She told them she was relocatable.  Sometime during Baumhover's term as the SM, in response to Kear's stated interest in a SM position, he commented that she could not be promoted because she was his "right hand man."  He also commented about her "always" being pregnant.  He told her she was too young to be a SM.  Patrick Bride, who was the DM in 2007 and 2008 told her at some point

that if she got "one number up," they would begin looking at a promotion.  Bride asked Kear how many children she was going to have.  After she had her second child in 2007, Bride stopped speaking with her about her performance and numbers, and instead spoke to her only about personal matters and family.  Kear also recalls Link telling her that if she stayed on, she would be on a "fast track" to a SM position.[32]

In March 2009, Kohl's generated a "turnover projection" report, predicting that Kear's employment would soon be ending.  It stated that Kear's employment was at risk for turnover due to her performance.  Kohl's cannot identify the performance concerns that caused her to be put on this list, but Kohl's corporate representative testified that Kear was placed on this report in 2009 because her Talent Matrix rating had declined from key performer to future professional, and that Kohl's uses the projected turnover report as a tool for determining when employee performance needs to improve.

A SM vacancy opened up at the Wichita East store in 2010.  Eric Newell was hired as a "Store Manager Bench" in April 2010, for the ultimate purpose of taking over the Wichita East SM position.  Newell was an external hire who had more than ten years of experience at a high volume Target, where he served as an Executive Team Leader for seven years.  That position at Target was considered by Kohl's to be equivalent to its ASM position.  Because Newell was an external hire, he was not subject to the Talent Matrix and development day requirements that applied to internal candidates.  Kear helped train Newell after he was hired on many policies, procedures, and daily tasks of the job.  Newell had no children.

In November 2008, Kohl's hired Derrick Drake to work at the Kansas City, Missouri store as an ASM.  Drake was promoted to SM of the Kansas Speedyway store, effective July 10,

---

[32]Doc. 205-7, Ex. 6 at 39:1–40:10.

2010.  In July 2010, the Kansas Speedway store was part of Region 7, the same region as the Wichita stores.  The stores were in different districts, however, so Drake reported to a different DM.  Just prior to his employment with Kohl's, Drake had worked as a General Manager at Linens N Things for about four years.  There is no performance evaluation in Drake's personnel file.  In July 2009, he was ranked as a future star on the Talent Matrix.

On July 13, 2005, Kohl's hired Dan Donagan as an ASM in its Lino Lakes, Minnesota location.  On July 25, 2010, he was promoted to SM at the Cambridge, MN store.  His performance evaluations as an ASM reflected that he "meets expectations."  Donagan reported to DM Jack Johnson, but the Cambridge store was part of Region 7, the same region as the Wichita stores.  In July 2009, Donagan was ranked on the Talent Matrix as a consistent star.  He had attended at least one development day.

In October 2010, Amanda McKee was selected to fill the SM position at the Wichita West store that Brogdin vacated.  McKee had worked at Kohl's since March 2004.   McKee had been ranked within the top three boxes in the Talent Matrix and was identified as promotable based on those rankings.  She had been selected, and attended, a development day prior to her promotion.  Prior to her promotion, McKee was an employee of Region 14.  Rob Carballo, the Region 14 Regional Vice-President, and the Region 14 Talent Manger made her promotion decision.[33]

Kear gave birth to her third child on June 21, 2010, and took eight weeks of leave after the birth to care for her daughter.  On August 28, 2010, while still on leave, Kear applied for

---

[33]Plaintiff purports to controvert this fact by arguing that (1) Region 7 included  District 34, the Wichita West district; and (2) Christiansen was the ultimate decisionmaker, as evidenced by her signature on McKee's promotion letter.  But neither argument controverts Christiansen's sworn statement that Carballo made the promotion decision.  Christiansen explained in her declaration that because McKee was not previously employed in Region 7, those regional executives did not make the decision to recommend her for promotion.  Instead, it was the Region 14 executives who made her promotion decision.

employment with a Kohl's competitor, Toys R Us, Inc.  Kear admitted in her deposition that the decision not to promote her to McKee's position in September 2010 did not influence her decision to apply at Toys R Us.  On September 10, 2010, Kear resigned her employment with Kohl's and accepted a position at Toys R Us.

During the course of discovery in this litigation, Kohl's received copies of educational records from WSU and learned that Kear did not graduate from WU.  Kear admits that she did not graduate, but claims she did not realize at the time she filled out her job application that she did not technically graduate, but only "walked" at the graduation ceremony.  She learned that she did not graduate after this litigation began.  Had Kohl's been aware that Kear had falsified information on her application during her tenure as an employee, her employment would have been terminated.  Kohl's had previously terminated employees who had falsified information on their employment applications.

## V.   Discussion

### A.  Timely Exhaustion

"[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."[34]  A plaintiff's Title VII allegation is timely if she files her EEOC charge within 300 days of the alleged unlawful employment practice, where, as here, a state administrative agency process exists.[35]  The KAAD has a shorter limitations period of six months.[36]  The general rule of accrual is that "a claim accrues when the disputed employment practice—the demotion, transfer, firing, refusal to hire, or the like—is first

---

[34]*Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).

[35]*Almond v. USD No. 501*, 665 F.3d 1174, 1176 (10th Cir. 2011); *Semsroth v. City of Wichita*, 304 F. App'x 707, 714 (10th Cir. 2008).

[36]K.S.A. § 44-1005(i), 44-1021(a).

announced to the plaintiff."[37]  Where an adverse employment decision is not announced and the employee does not learn about it until later, the court considers "when the plaintiff did or a reasonable employee would have known of the employer's decision."[38]  The employee need not be aware of the discriminatory intent behind the adverse employment decision; the court looks to when the employee discovered or should have discovered the injury.[39]

Kear filed her administrative charge on April 9, 2011.  Therefore, for the federal claim to be timely, the discrimination complained of in the charge must have accrued by June 13, 2010. Defendant argues that Kear did not timely exhaust her failure to promote claims that were made before June 13, 2010.  In her summary judgment response, Kear concedes that many of the promotions for which she was denied were outside the period of exhaustion.  She claims that the following four SM promotion decisions were timely: (1) Newell, promoted to the Wichita East store manager "bench"  in April 2010, and officially placed as store manager in July 2010; (2) Donagan, promoted to the Cambridge, Minnesota SM position on July 25, 2010; (3) Drake, who was promoted to the Kansas Speedway SM  position effective on July 25, 2010; and (4) Amanda McKee, who was hired as the Wichita West SM, effective in October 2010.

Of these four promotions, Defendant only challenges the timeliness of Newell's promotion, which it argues accrued in April 2010 when he was hired to the SM "bench" with the ultimate purpose of becoming a SM.  Kear maintains that the claim did not accrue until July 2010, when he was actually named SM of the Wichita East store.  There is no evidence in the record about when the decision to promote someone other than Kear for this vacancy was first announced to her.  Given that there was no application process, it can be reasonably inferred that

---

[37]*Almond*, 665 F.3d at 1177.

[38]*Id.*

[39]*Id.*

this decision was not announced—Kear was not formally rejected because she never applied. The Court must therefore determine when Kear or a reasonable employee would have learned about the decision to make Newell the Wichita East SM.  Viewing the facts in the light most favorable to Kear, she did not know about Kohl's decision to name Newell and not herself as the Wichita East SM until he was effectively made store manager in July 2010.  This failure to promote claim is therefore timely.

### B.  Failure to Promote

Kear claims that she was not promoted to four available SM positions between July 2010 and October 2010, because of her gender.  Specifically, she claims that she was denied these promotions because she was the mother of young children.  Defendant denies that Kear was qualified for the SM positions because she did not achieve high enough scores on the internal Talent Matrix used to determine ASM promotions, a legitimate nondiscriminatory reason for failing to promote her.  Kear does not offer direct evidence of discrimination,[40] so the familiar *McDonnell Douglas*[41] burden shifting framework applies on summary judgment.  This analysis proceeds in three steps: "(1) the plaintiff must establish a prima facie case of discrimination or retaliation; (2) the defendant employer must offer a legitimate non-discriminatory reason for the adverse employment action; and (3) the plaintiff must show there is at least a genuine issue of material fact as to whether the employer's proffered legitimate reason is genuine or pretextual."[42]  Under *McDonnell Douglas*, plaintiff initially bears the burden of

---

[40]*See Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013) (discussing the difference between direct and circumstantial evidence).

[41]411 U.S. 792 (1973).

[42]*Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014) (citation omitted).  The Court analyzes failure to promote claims under Title VII and the KAAD under the same legal framework.  *See Swackhammer v. Sprint/United Mgmt.*, 493 F.3d 1160, 1174 n.7 (10th Cir. 2007).

production to establish a prima facie case of discrimination or retaliation.[43]  The burden of establishing the prima facie case is "not onerous."[44]  If Plaintiff establishes a prima facie case, the burden shifts to defendant to articulate a facially nondiscriminatory reason for its actions.[45]  If defendant articulates a legitimate nondiscriminatory reason, the burden shifts back to plaintiff to present evidence from which a jury might conclude that defendant's proffered reason is pretextual, that is, "unworthy of belief."[46]

### 1.   Prima Facie Case

To establish a prima facie case on a failure to promote claim, Kear must demonstrate by a preponderance of the evidence that (1) she belongs to a protected class; (2) she applied for a position for which she was qualified; and (3) "she 'was rejected under circumstances which give rise to an inference of unlawful discrimination.'"[47]  Kohl's argues that Kear cannot show that she was qualified for the SM position or that she was rejected under circumstances giving rise to an inference of discrimination.  Kohl's also argues that Kear cannot base her failure to promote claim on her status as the mother of young children.

Defendant appears to concede that because there was no formal application process for internal employees to apply for SM positions, the law does not require Kear to have applied in order to allege a failure to promote claim.[48]  The employer must be on specific notice that the plaintiff either seeks the job, or would be reasonably interested in the job.  Kear has come

---

[43]*McDonnell Douglas*, 411 U.S. at 802.

[44]*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 238, 253 (1981).

[45]*Id.*; *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1113 (10th Cir. 2007).

[46]*Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1165 (10th Cir. 1998) (quoting *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995)).

[47]*See Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013) (quoting *Burdine*, 450 U.S. at 253); *Hamilton v. Okla. City Univ.*, 563 F. App'x 597, 601 (10th Cir. 2014).

[48]*See, e.g.*, *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1228 (10th Cir. 2001), *overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

forward with uncontroverted evidence that she repeatedly notified her superiors at Kohl's that she wished to be considered for any open SM position and that she would be willing to relocate.

As to Kear's qualifications for the SM position, the relevant inquiry at the prima facie stage is whether "the employee has introduced some evidence that she possesses the objective qualifications necessary to perform the job sought."[49]  Subjective qualifications, as well as "employer-imposed qualifications that have no bearing on an applicant's ability to perform the job sought" should be considered at the pretext stage.[50]  It is undisputed that Kear met the written requirements included in the SM job description.  Although Kohl's had an internal process that it used to select ASMs for promotion, this procedure was not written down, nor incorporated into the job description.  Given the minimal burden of demonstrating that she was qualified to perform the SM job at the prima facie stage, the Court finds that Kear has satisfied this element.

The Court need not address the first and last elements of the prima facie case.  Although the parties spend significant time in their briefs addressing whether Kear's protected status is based on her sex, or instead on her status as a mother with young children, there is no dispute that for purposes of the prima facie case she is female and therefore belongs to a protected class. And the issues Kohl's raises as to the last element are better addressed in detail at the pretext stage.  The Court therefore proceeds to the pretext inquiry.

### 2.  Pretext

As in many employment discrimination cases, the disputed facts here center on whether Kear can establish a genuine issue of material fact on the third step of the *McDonnell Douglas* framework—pretext.  Kohl's has offered a legitimate non-discriminatory explanation for its

---

[49]*EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1194 (10th Cir. 2000); *Jones v. Unified Gov't of Wyandotte Cnty./Kansas City, Kan.*, 552 F. Supp. 2d 1258, 1264 (D. Kan. 2008).

[50]*Horizon*, 220 F. Supp. 2d at 1194; *see also Ellison v. Sandia Nat'l Labs.*, 60 F. App'x 203, 205 (10th Cir. 2007) (holding that the defendant's evidence of work performance should not be considered at prima facie stage).

decisions not to promote Kear.  It offers that she was not as qualified as the other candidates who were promoted based on her Talent Matrix scores and her failure to attend a development day. Kear therefore must show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence."[51]  Evidence of pretext may include "prior treatment of plaintiff; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating . . . criteria); and the use of subjective criteria."[52]  Kear argues pretext based on the following: (1) she was more qualified than those who were hired as SM on each of the four occasions at issue; (2) Kohl's policy of not posting SM openings was unreasonable and allows for a reasonable inference of pretext; (3) the criteria used to evaluate Kear was subjective and susceptible to discriminatory application; (4) Kear's Talent Matrix plotting was based on input from people who discriminated again her and incorrectly predicted she would be leaving the company; and (5) prior discriminatory failures to promote and prior sexual harassment and retaliatory conduct allow an inference of pretext as to the 2010 decisions.

### Qualifications

The parties dispute the relative qualifications of Kear and the individuals who were ultimately promoted on the four occasions at issue in this case.  The Tenth Circuit has explained the significance of considering qualifications as follows:

> [W]e acknowledge the prudent admonition that courts "must proceed with caution when considering the relative merits of individual employees" or candidates for employment.  *Jaramillo v.*

---

[51]*E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1052 (10th Cir. 2011) (citation and quotation marks omitted).

[52]*Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1328 (10th Cir. 1999), *overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

> *Colo. Judicial Dep't*, 427 F.3d 1303, 1308 (10th Cir.2005) (per curiam).  To that end, "[w]e will draw an inference of pretext where the facts assure us that the plaintiff is better qualified than the other candidates for the position."  *Santana v. City & Cnty. of Denver*, 488 F.3d 860, 865 (10th Cir.2007) (quotation omitted).  But "minor differences between a plaintiff's qualifications and those of a successful applicant are not sufficient to show pretext." Jaramillo, 427 F.3d at 1308–09.  "[T]o suggest that an employer's claim that it hired someone else because of superior qualifications is pretext for discrimination rather than an honestly (even if mistakenly) held belief, a plaintiff must come forward with facts showing an 'overwhelming' 'disparity in qualifications.'"  *Johnson*, 594 F.3d at 1211 (quoting *Jaramillo*, 427 F.3d at 1309).[53]

Kear points to her six years of experience as an ASM at Kohl's when Newell was hired and the fact that she trained him.  She complains that Drake's personnel file contains no performance evaluations, and he had limited store management experience.  She points to Donagan's "meets expectations" evaluations before his promotion.  And Kear claims that Kohl's has provided "shifting explanations" about who promoted McKee, calling into question that promotion.

Kear has failed to produce evidence that assures the Court that she was better qualified for these four promotions than the individuals who were ultimately promoted or hired.   None of the evidence Kear musters in support of her claim that she was more qualified shows that there was an overwhelming disparity in qualifications.  Newell was an external hire, so he was not subject to the Talent Matrix.  He had been hired after many years of ASM experience at Target.  Although it is undisputed the Kear voluntarily trained Newell on certain policies and procedures at Kohl's, there is no evidence that she trained him to be a store manager, nor that her experience was greater than his.  The Executive Team Lead position that he previously held at Target was considered equivalent to Kear's ASM position.  At best, this suggests that the two had equivalent experience, not that Kear was overwhelmingly more qualified.

---

[53]*Hamilton v. Okla. City Univ.*, 563 F. App'x 597, 602 (10th Cir. 2014).

Drake's lack of performance evaluations likewise does not suggest Kear was overwhelmingly more qualified.  He had worked for four years as a general manager at Linens N Things, and then almost two years as an ASM at Kohl's before his promotion.  And by July 2009, he was ranked as a future star on the Talent Matrix, one of the top three possible ratings on the matrix.  Kear was ranked lower as a key performer and future professional.

Kear has no evidence to suggest she was more qualified than Donagan; she merely asserts that they had similar performance evaluations.  But again, the evidence is undisputed that it is the Talent Matrix plotting that matters for promotion decisions.  Donagan was rated a consistent star on the Talent Matrix—the highest possible score.

Likewise, McKee was ranked in the top three boxes of the matrix before her promotion, higher than Kear.  As such, Kear cannot show that McKee was less qualified.  Her challenge to Kohl's evidence about McKee's decisionmaker has no bearing on McKee's qualifications to be a SM.  In fact, Kear's challenge is not supported by the evidence.  McKee would have been plotted through the collaborative process of her SM and DM, who were different than the SM and DM who would have determined Kear's score.  There is no evidence that Kohl's provided shifting explanations about McKee's decisionmakers, and Kear fails to articulate how this calls into question the nondiscriminatory reason given for Kohl's decision to promote McKee and not Kear to the Wichita West store's SM position.

"When two candidates are equally qualified in that they both possess the objective qualifications for the position and neither is clearly better qualified, 'it is within the employer's discretion to choose among them so long as the decision is not based on unlawful criteria.'"[54] There is no genuine issue of material fact that Kear was not overwhelmingly more qualified than

---

[54]*Simms*, 165 F.3d at 1330 (quoting *Colon-Sanchez v. Marsh*, 733 F.2d 78, 82 & n.1 (10th Cir. 1984)) (citations omitted).

the candidates Kohl's promoted instead, and there is no evidence that the decisions to promote them were based on unlawful criteria.

### *Talent Matrix Scoring*

The undisputed evidence shows that the Talent Matrix scoring was determined through a collaborative process with the SM, DM, and Human Resources Talent Manager.  The DM then presented these scores to the regional executives.  Kear contends that her Talent Matrix scores were infected with discriminatory animus, and therefore call into question the legitimacy of Kohl's proffered explanation for not promoting her.

First, Kear offers testimony from Stephen Escobar, who was SM of a Texas store, that his DM, Doug Gorton, told him to lower a leadership score for a female ASM because she had recently given birth to a child and was therefore not focused.[55]  Escobar testified further that Gorton had advocated for a  lower Talent Matrix score for another woman who had asked for time off to get married in early 2011.  Escobar reported his objection about this conduct to Merle Mack, who was the Territory 1 Vice President of Human Resources for Kohl's, in March 2011. In response, Escobar alleges that Mack immediately instructed him to resign.

Kohl's objects to the admissibility of this evidence, arguing that it has no relevance to the alleged discrimination in this case.  Kear offers this evidence to show that because Kohl's allegedly made a discriminatory Talent Matrix decision according to Escobar, its decision not to promote Kear was also pretextual.  To be probative of pretext, prior instances of alleged discrimination must "somehow be tied to the employment actions disputed in the case at hand."[56] Likewise, evidence that Kohl's decisinmakers harbored a general bias against a protected class requires a showing that there was some connection between the general bias and the particular

---

[55]Doc. 205, Ex. 4 at 62:1–14.

[56]*Simms*, 165 F.3d at 1330.

employment decision.[57]  To meet this requirement, Kear could show that the same supervisors

made the employment decisions.[58]  She cannot show that Gorton had anything to do with her

promotion decisions, however, she argues that because Escobar complained to Mack, who was

Christiansen's boss, Mack's retaliatory conduct toward Escobar should be imputed to the

promotion decisions involving Kear.  The Court finds this link to be too attenuated.  It is

undisputed that Brogdin, Link, Riley, and Christiansen were the only decisionmakers with

respect to Kear's failure to be promoted in 2010.  Only Christiansen could have arguably been

affected by any alleged discriminatory animus of Mack's.  But Kear has come forward with no

evidence that Mack had any participation or influence as to Kear's Talent Matrix score, or as to

Christiansen's consideration of Kear.

        In considering prior instances of misconduct, the Court must also consider the time frame

in which the other incident occurred because "[d]iscriminatory incidents which occurred either

several years before the contested action or anytime after are 'not sufficiently connected to the

employment action in question to demonstrate pretext.'"[59]  Kear does not provide the Court with

the portions of Escobar's deposition transcript that may show when Gorton's conduct occurred.

He testified that he reported this conduct to Mack in March 2011, well after Kear's resignation.

The Court finds that Kear has failed to establish a nexus between the prior incident of alleged

discrimination by Gorton and Mack, and the employment decisions affecting Kear.  As such, this

evidence is not probative that Kohl's stated reason for not promoting Kear was a pretext for

discrimination.

---

[57]*Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1144 (10th Cir. 2009).

[58]*Simms*, 165 F.3d at 1330.

[59]*Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 856 (10th Cir. 2000) (quoting *Simms*, 165 F.3d at 1331); *see Bandi v. Colvin*, No. 14-6224, 2015 WL 4296716, at *7 (10th Cir. July 16, 2015) (considering other complaints made against the same decisionmaker only if the claims were similar and they happened during the same time period).

Kear focuses on positive comments she received on her 2006, 2007, and 2008 performance evaluations and suggests that these reviews should have translated into better Talent Matrix assessments.  But again, Kear submits only year-end performance evaluations for the years before the 2010 promotion decisions.  In order for her claim to be actionable, she must be able to demonstrate to a reasonable factfinder that the 2010 promotion decisions were based on a Talent Matrix that underscored her for discriminatory reasons.  There is no link in the record between her satisfactory performance evaluations in 2006–08 and the 2010 Talent Matrix scores that determined whether Kear was eligible for promotion.

Kear compares herself to two other male ASMs who were promoted in 2007 and 2008, despite similar or worse credentials as Kear.  While evidence that Kear was treated differently from other similarly situated nonprotected employees may demonstrate pretext, a similarly situated employee is someone who "deals with the same supervisor and is subject to the same standards governing performance evaluation and discipline."[60]  While the Court can reasonably infer that these other ASMs were subject to the same standards for promoting ASMs as Kear, there is no evidence in the record that the same supervisors made the promotion decisions.  In fact, it is undisputed that a different SM took over at the Wichita West store in 2009 and was responsible for Kear's Talent Matrix assessment, along with DM Link.  Kear cannot demonstrate that these other employees were similarly situated, so this evidence is not probative of pretext.

Kear points to a 2009 report Kohl's generated, predicting that she would be separating from employment due to her performance, and argues that Kohl's could not identify any specific performance concerns that justified this prediction.  Kear argues that this inconsistency or implausibility suggests the decision not to promote her was pretextual.  Kohl's responds that

---

[60]*See, e.g.*, *Green v. New Mexico*, 420 F.3d 1189, 1194–95 (10th Cir. 2005).

being placed on this report does not mean that a person will be terminated or disciplined. Christiansen testified that Kear was placed on this report in 2009 because her Talent Matrix rating had declined from key performer to future professional.  The Court agrees that the evidence is not inconsistent or implausible.  It is undisputed that Kear's Talent Matrix score had decreased.  It is also undisputed that Kohl's uses the projected turnover report as a tool for determining when employee performance needs to improve.  Moreover, Kear makes no attempt to explain how this report demonstrates that Kohl's Talent Matrix assessments dictated its promotion decisions in 2010.  In fact, Kear's Talent Matrix assessment had improved by one box between 2009 and 2010 when the promotion decisions were made.

### Discriminatory Intent of Nondecisionmakers and Prior Discriminatory Conduct

In 2010, when the actionable promotion decisions in this case were made, Brogdin was the SM, Riley was the Regional Vice-President, Christiansen was the Region 7 HR Talent Manager, and Link was the DM.  Kear does not allege discriminatory conduct by any of these decisionmakers.  Instead, she produces evidence of discriminatory conduct by prior decisionmakers.  She also produces evidence of sexual harassment and hostile work environment largely caused by her prior SMs, Baumhover and Abrams.  Where a plaintiff lacks evidence that the decisionmakers lacked discriminatory animus, she can show pretext under a "cat's paw" theory of recovery by showing that "a biased subordinate who lacked decisionmaking power used the formal decisionmaker as a dupe in a deliberate scheme to bring about an adverse employment action."[61]  To survive summary judgment under this theory, "plaintiff must establish that there is a genuine issue of material fact as to (1) the retaliatory animus of the subordinate,

---

[61]*Thomas v. Berry Plastics Corp.*, –F.3d–, 2015 WL 5638027, at *3 (10th Cir. Sept. 25, 2015).

and (2) whether the subordinate's animus translated into retaliatory actions that caused the decisionmaker to take adverse employment action."[62]

This case differs from a traditional cat's paw case in that Kear focuses not on subordinates, but on past decisionmakers. To be sure, the decisionmakers she discusses in her briefs contributed to her Talent Matrix scoring in past years, which certainly affected promotion decisions made during their tenure. And Kear submits evidence that she filed a sexual harassment complaint against Abrams in June 2009. But assuming Kear's allegations of sexual harassment and discriminatory treatment by Baumhover and Abrams are true, it is undisputed that those SMs left the Wichita West store in 2008 and 2009, respectively. Kear points to no evidence that either SM had input into the 2010 Talent Matrix that would have determined her eligibility for the 2010 promotions that are the subject of this lawsuit. In fact, Kohl's corporate representative testified that Abram's opinion of Kear would not have affected her 2009 Talent Matrix because he left in September 2009, and the one that was conducted earlier that year had been calibrated with the DM's opinion.[63] Also, Bride was not a DM when the 2010 promotion decisions were made. Therefore, assuming Kear has met the first prong of a cat's paw theory, she has come forward with no evidence that these prior supervisors' discriminatory animus translated into the specific 2010 promotion decisions at issue in this case. Nor can she show that the comments made by these individuals in 2007–09 are relevant to the promotion decisions made in 2010 by different decisionmakers.[64]

---

[62]*Id.* (citing *EEOC* v. *BCI Coca-Cola*, 450 F.3d 476, 484–85 (10th Cir. 2006)); *Simmons v. Sykes Enters., Inc.*, 647 F.3d 943, 950 (10th Cir. 2011)).

[63]Doc. 206-6, Ex. 5 at 175:14–176:25.

[64]*See, e.g.*, *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1184 (10th Cir. 2006) (holding comments that evince animus must be tied to the adverse employment action at issue in the case).

Kear cites to co-worker Sarah Reeves's deposition testimony that she experienced disparaging comments about her pregnancy by "her manager Megan Grey" in October 2010 and April 2011.  However, there is no evidence in the record of Megan Grey's position, or how these comments could have affected Kear's Talent Matrix score, given the undisputed fact that Brogdin was her SM at the time.  Kear maintains that co-worker Josh Preble and Sean McKinney made inappropriate, sexually harassing comments to her, and that many other employees made such comments.  But she testified about specific comments by Preble and McKinney in relation to an email she sent to Jeff Keeler on September 25, 2009; this conduct therefore must have occurred prior to that date.  Kear's generic allegation that many other employees engaged in "vulgar talk" and laughing about sexual harassment fails to allege a timeframe.  She lists several individuals in this factual allegation, and it is uncontroverted that many of the listed individuals' conduct occurred prior to June 13, 2010.  Given this deficiency, and the fact that Kear has come forward with no evidence to show that their behavior contributed to any of the 2010 promotion decisions, no reasonable jury could conclude that this is evidence that Kohl's stated reasons for the 2010 promotion decisions were pretextual.

### *Subjective Criteria*

Finally, Kear argues that Kohl's failure to post SM positions, and its use of subjective criteria on the Talent Matrix assessment renders its explanation for her lack of promotion unworthy of credence.  It is undisputed that to be eligible for promotion, Kear must have been rated highly on the Talent Matrix.  The ASMs that were promoted ahead of Kear had been ranked in the top three boxes of the matrix.  Viewing the evidence in the light most favorable to Kear, this rating also drove whether Kear was invited to a development day because that decision was largely based on how well she was ranked on the matrix.  Although Kohl's based its Talent

Matrix rankings on performance, it admits that the criteria used to determine these rankings are partially subjective.  For example, to be rated a deep professional, the ASM: "Knows job very well, enhances skills as necessary."  To be ranked one box lower, as professional, the ASM "Knows the job well, recognized as expert in role."

Nonetheless, subjective criteria alone is insufficient to establish pretext.[65]  In order to trigger an inference of discrimination, the use of subjective criteria must be coupled with other circumstantial evidence.[66]  And for subjective criteria to create an inference of pretext, the criteria upon which the employer relied must be entirely subjective in nature.[67]  It is undisputed that there were some strictly objective measures that contributed toward the Talent Matrix score, such as the amount of credit cards an ASM was able to sell.  And the fact that the scoring involved some subjective determinations does not render it entirely subjective—the scores were based on mandatory areas for consideration as to the ASMs' performance and potential.[68]  As discussed above, Kear has come forward with no other circumstantial evidence of pretext as to the 2010 promotion decisions, so the presence of partially subjective criteria used to make promotion decisions is insufficient standing alone to infer pretext.

## VI.    Conclusion

In sum, the Court finds that Kear abandoned her pregnancy discrimination claim and that her sexual harassment claim is not within the scope of her administrative charge, so those claims must be dismissed.  In addition, the failure to promote claims are dismissed as untimely to the extent they accrued before June 13, 2010.  What remains are four distinct promotion decisions in

---

[65]*Riggs v. AirTran Airways*, 497 F.3d 1108, 1120 (10th Cir. 2007) (citing *Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1195 (10th Cir. 2006)).

[66]*Id.*

[67]*Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1145 (10th Cir. 2009).

[68]*Id.* at 1145–46 (explaining the standard is whether the supervisor is given unfettered discretion).

2010.  Kohl's did not consider Kear to be qualified for any of these positions based on her Talent Matrix assessment.  Although the Talent Matrix assessment was partially subjective, Kear has come forward with no other evidence to suggest it was used as a pretext for discrimination in 2010.  Because Kear has not shown that Kohl's stated reason for not promoting her was a pretext for discrimination, Kohl's motion for summary judgment must be granted.  Accordingly, the Court need not address whether Defendant can demonstrate at trial that it would have terminated Kear upon learning that she did not in fact graduate from WSU.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion for Summary Judgment (Doc. 195) is **granted**.

**IT IS FURTHER ORDERED** that Plaintiff's  Motion for Leave to File Surreply (Doc. 220) is **granted**, and Plaintiff's Motion for Oral Argument (Doc. 210) is **denied**.

**IT IS SO ORDERED.**

Dated: <u>October 26, 2015</u>

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE